**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| GENSPERA, INC., ) <br> Plaintiff, ) <br> v. ) <br> ANNASTASIAH MUDIWA MHAKA, ) <br> Defendant. ) | Civil Action No. 12-cv-772-MJG |

**GENSPERA, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Robert A. Stolworthy, Jr. (D. Md. Bar No. 29314)
John E. Nilsson (*pro hac vice*)
Seth I. Heller (*pro hac vice*)
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
(202) 942-5000
(202) 942-5733 (fax)
Robert.Stolworthy@aporter.com
John.Nilsson@aporter.com
Seth.Heller @aporter.com

Wallace Wu (*pro hac vice*)
ARNOLD &PORTER LLP
44th Floor
777 South Figueroa Street
Los Angeles, CA 90017
(213) 243-4000
(213) 243-4199 (fax)
Wallace.Wu@aporter.com

*Counsel for Plaintiff GenSpera, Inc.*

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ...................................................................................................... 2

    A.   Conception Occurs No Later Than The Application Date ....................................2

    B.   The Application Must Satisfy The Written Description Requirement On The Date Of Filing, And Subsequently Amended Claims Must Not Add New Matter ................................................................................................2

    C.   Section 256 Is A Savings Provision Invoked To Preserve A Patent's Validity ..................................................................................................3

    D.   Section 256 Cannot Correct Inventorship When Alleged Conception Takes Place After The Applicable Priority Date .....................................4

    E.   Mhaka Has Admitted That, Because Her Alleged Conception Took Place After The Priority Date, She Cannot Be Named An Inventor .......................7

CONCLUSION ................................................................................................................ 8

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Britesmile, Inc. v. Discus Dental, Inc.*,
    No. C 02-03220 JSW, 2005 WL 1083194 (N.D. Cal. May 9, 2005) ............................... 4, 6, 7

*Burroughs Wellcome Co. v. Barr Laboratories, Inc.*,
    40 F.3d 1223 (Fed. Cir. 1994) .................................................................................................. 2

*Gemstar-TV Guide International, Inc. v. International Trade Commission*,
    383 F.3d 1352 (Fed. Cir. 2004) ............................................................................................ 3, 4

*Laube v. FURminator, Inc.*,
    No. CV 11–3027–RSWL, 2011 WL 4039132 (C.D. Cal. Sept. 9, 2011) ................................. 4

*LizardTech, Inc. v. Earth Research Mapping, Inc.*,
    424 F.3d 1336 (Fed. Cir. 2005) ............................................................................................... 3

*Oregon Health & Science University v. Vertex Pharmaceutical, Inc.*,
    233 F. Supp. 2d 1282 (D. Or. 2002) ............................................................................. 2, 3, 5, 6

*Purdue Pharma L.P. v. Faulding Inc.*,
    230 F.3d 1320 (Fed. Cir. 2000) ............................................................................................... 3

*University of Pittsburgh v. Hedrick*,
    573 F.3d 1290 (Fed. Cir. 2009) ............................................................................................... 2

**STATUTES**

35 U.S.C. § 102(f) ............................................................................................................................ 4

35 U.S.C. § 112 ................................................................................................................................ 3

35 U.S.C. § 116 ................................................................................................................................ 3

35 U.S.C. § 132 ................................................................................................................................ 3

35 U.S.C. § 256 ......................................................................................................................... passim

35 U.S.C. § 282(a) ........................................................................................................................... 4

**OTHER AUTHORITIES**

Rule 56 of the Federal Rules of Civil Procedure ............................................................................ 1

Local Rule 105 ................................................................................................................... 1

Manual of Patent Examination and Procedure § 2138.05 ............................................... 2

Robert A. Matthews, 4 ANNOTATED PATENT DIGEST § 26:116 (2012) ......................... 5

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 105, GenSpera, Inc. ("GenSpera" or "Plaintiff") respectfully requests that this Court enter summary judgment in its favor and against Defendant Annastasiah Mudiwa Mhaka ("Mhaka").

## I. INTRODUCTION

In this Court's Letter Order (Doc. No. 36) of October 24, 2012, it asked that the Parties agree, for the purpose of GenSpera's motion for summary judgment, to accept the following propositions: (1) that "[t]he PCT application for the patents at issue in this case (U.S. Patents 7,468,354 and 7,767,648) was filed on November 30, 2001"[1]; and (2) that "Dr. Mhaka, after 2001, contributed to the patents in a significant, material, inventive way in connection with the compound G-202, also referred to as AMM9, included in claim 1 of both patents that were issued."[2]  In other words, if Mhaka made any inventive contribution to claim 1 of the '354 patent or claim 1 of the '648 patent, then that contribution took place before the application and after the claims' priority date.  Under the patent law, however, if that is the case then the Court simply cannot "correct" the patents' inventorship under 35 U.S.C. § 256 to add Mhaka as inventor.  Recently, in a complaint filed in the Circuit Court for Baltimore City, Mhaka admitted this fundamental flaw in her inventorship claim, stating that "[a]dding Dr. Mhaka to the Patents would necessitate their invalidity because they would necessarily run afoul of 35 U.S.C. § 112[,]" something prohibited under the law because "35 U.S.C. § 256 cannot be used to correct the inventorship of a patent where to do so would necessitate the patent's invalidity."

---

[1] This proposition is undisputed.

[2] GenSpera accepts the second proposition (which it understands to be Defendant Mhaka's contention in this case) only for the purpose of its summary judgment motion.

(Complaint ¶¶ 85-86 (attached hereto as Exhibit 1).)[3]  Accordingly, for the reasons set forth herein, the Court should enter summary judgment in GenSpera's favor.

## II.    ARGUMENT

### A.    Conception Occurs No Later Than The Application Date

"Conception is the touchstone of inventorship . . . ."  *Univ. of Pittsburgh v. Hedrick*, 573 F.3d 1290, 1297 (Fed. Cir. 2009).  The United States Court of Appeals for the Federal Circuit has explained that conception is "the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice."  *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994).  The Manual of Patent Examination and Procedure ("MPEP") instructs that "[t]he filing of a patent application serves as conception and constructive reduction to practice of the subject matter described in the application."  MPEP § 2138.05 (citing *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998)).  Thus, "both conception and reduction to practice are deemed to occur *no later than the filing date of the patent application*."  *Oregon Health & Sci. Univ. v. Vertex Pharm., Inc.*, 233 F. Supp. 2d 1282, 1285 (D. Or. 2002) (emphasis added) (citing *Hyatt*, 146 F.3d at 1352).

### B.    The Application Must Satisfy The Written Description Requirement On The Date Of Filing, And Subsequently Amended Claims Must Not Add New Matter

Because conception is considered to be complete as of the filing date, "'it is essential that there be no question that, *at the time an application for patent is filed*, the invention claimed

---

[3] On November 9, 2012, the state-court action was removed by the Defendants to this Court on the ground that it raised substantial issues of patent law.  On November 16, 2012, the Defendants moved to dismiss the complaint on the grounds that: (1) Mhaka had engaged in impermissible claim-splitting; and (2) Mhaka's claims are preempted by U.S. patent law.

therein is fully capable of being reduced to practice . . . .'" *Id.* (alteration in original) (quoting *In re Argoudelis*, 434 F.2d 1390, 1395 (Fed. Cir. 1970) (Baldwin, J., concurring)).  This is the essence of the patent law's "written description" requirement, codified at 35 U.S.C. § 112, the purpose of which is to demonstrate that "the [inventors] invented what is claimed." *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1344-45 (Fed. Cir. 2005).  Although the written description need not "provide *in haec verba* support for the claimed subject matter at issue," it must "convey with reasonable clarity to those skilled in the art that . . . [the inventor] was in possession of the invention." *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000) (alterations in original).

If a claim is added after the date of the application, it must not contain "new matter"—that is, matter not adequately described in the original application.  If it does, the claim may be subject to invalidation under 35 U.S.C. § 132.  As one court explained, "[t]he new matter prohibition of 35 U.S.C. § 132 serves to ensure that the patent applicant was in full possession of the claimed subject matter *on the application filing date*." *Oregon Health*, 233 F. Supp. 2d at 1285 (emphasis added) (citing *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001)).

**C.      Section 256 Is A Savings Provision Invoked To Preserve A Patent's Validity**

Pursuant to 35 U.S.C. § 116, "[w]hen an invention is made by two or more persons jointly, they shall apply for patent jointly and each make the required oath, except as otherwise provided in this title."  The identification of the correct inventors is critical because "[a] patent is invalid if more or fewer than the true inventors are named." *Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1381 (Fed. Cir. 2004) (citing *Jamesbury Corp. v. United States*,

518 F.2d 1384, 1395 (Ct. Cl. 1975)); *see also* 35 U.S.C. § 102(f) (explaining that a person is entitled to a patent unless "he did not himself invent the subject matter sought to be patented").[4] An incorrect identification of a patent's inventors is not irremediable, however.  Under 35 U.S.C. § 256, an error in naming persons who are not inventors or in omitting inventors will not invalidate a patent where a correction is requested (and approved by) the PTO Director, or where "[t]he court before which such matter is called in question [orders] correction of the patent on notice and hearing of all parties concerned[.]"  As another court has explained, "[s]ection 256 is a *savings provision* which cures a patent that would otherwise be invalid based on its failure to name more than or omit at least one of the true inventors."  *Britesmile, Inc. v. Discus Dental, Inc.*, No. C 02-03220 JSW, 2005 WL 1083194, at *4 (N.D. Cal. May 9, 2005) (emphasis added) (citing *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1350 (Fed. Cir. 1998)).

      **D.**      **Section 256 Cannot Correct Inventorship When Alleged Conception Takes Place After The Applicable Priority Date**

Precisely because section 256 is a savings provision, it cannot be enlisted in such a way as to invalidate a patent.  "If a claim of inventorship first necessitated a finding that the patent was invalid, *an action to change inventorship under § 256 must fail*."  *Laube v. FURminator, Inc.*, No. CV 11–3027–RSWL, 2011 WL 4039132, at *1 (C.D. Cal. Sept. 9, 2011) (emphasis added).  Thus, an allegedly omitted inventor like Dr. Mhaka cannot "correct" a patent based on work done after the filing date; such allegations, if proven, do not show joint inventorship but rather would show inadequate support in the original disclosure for the claimed invention.  As one commentator has explained:

---

[4] Because patents are presumed valid, *see* 35 U.S.C. § 282(a), there is a presumption that the named inventors on a patent are the true inventors.  *See Gemstar*, 383 F.3d at 1381.

4

Axiomatically, to have a valid patent, all work of each joint inventor towards the conception of the claimed invention must have been done before the filing date of the patent application. Thus, *any party claiming to be an alleged omitted inventor who can only show alleged contributions to the conception based on acts done after the filing date of the patent application, as a matter of law, cannot be a joint inventor to what was disclosed in the application*."

Robert A. Matthews, 4 ANNOTATED PATENT DIGEST § 26:116 (2012) (emphasis added).

Two court decisions confront this issue directly. The first is *Oregon Health & Sci. Univ. v. Vertex Pharm., Inc.*, 233 F. Supp. 2d 1282 (D. Or. 2002). In *Oregon Health*, the defendant, Vertex Pharmaceuticals, filed a patent application in 1995. *Id.* at 1283. Hired as a consultant by Vertex, the allegedly omitted inventor, Dr. Gold, made his discovery in 1996, over one year after the application had been filed by Vertex. *Id*. After Dr. Gold communicated his discovery to Vertex, the company amended certain of the pending claims so as to cover Dr. Gold's discovery. *Id.* at 1283-84. Oregon Health (Dr. Gold's employer) subsequently brought an action under 35 U.S.C. § 256 to add Dr. Gold as a joint inventor to the patent. *Id.* at 1284. Like Dr. Mhaka, Oregon Health insisted that it was not challenging the validity of the patent but rather seeking only to have Dr. Gold's contribution recognized. *See id.* ("Plaintiff responds that it is not attacking the validity of the patent, but merely seeks to have Dr. Gold's contribution to the invention claimed in the '370 patent recognized by adding Dr. Gold's name to the patent.").

The court discerned the flaw in this position, explaining that "[w]hile it is true that plaintiff is not arguing that the '370 patent should be declared invalid, a decision that Dr. Gold should be added to the '370 patent would require a preliminary finding that the patent is invalid." *Id*. at 1285. Otherwise, the court reasoned, "the contention that Dr. Gold is a co-inventor of the claimed subject matter on an application filed one year before his collaboration would be nonsensical." *Id*. This was because "[t]o add Dr. Gold to the patent would necessarily require a

5

finding that defendant was not in possession of the claimed subject matter at the time it filed its application or, in other words, that the patent is invalid." *Id*. Because "adding Dr. Gold in this instance would mean that the patent is necessarily invalid," the *Oregon Health* court concluded that it could not act under Section 256 to add him as an inventor to the patent based on his post-application efforts — "Congress has conferred no jurisdiction on the federal courts to adjudicate a patent's validity in a Section 256 action to correct inventorship." *Id.* As a consequence, the *Oregon Health* court held that, "*as a matter of law*, Dr. Gold cannot be named as a joint inventor under Section 256." *Id.* (emphasis added).

The second decision to confront this issue directly was *Britesmile, Inc. v. Discus Dental, Inc.,* No. C 02-03220 JSW, 2005 WL 1083194 (N.D. Cal. May 9, 2005). The patents at issue in *Britesmile* shared identical specifications drawn from a parent application. *Id*. at *2. Like Dr. Mhaka, the allegedly omitted inventor in *Britesmile* (a Dr. Nathoo) did not make his alleged inventive contribution until after the patent application had been filed. *Id*. at *4. He nonetheless argued that "the claims of the patents at issue in his counterclaims disclose new matters not described in the written descriptions . . . ." *Id.* The court concluded that Dr. Nathoo's claim, "if true, would invalidate these patents pursuant to Section 112, ¶ 1." *Id.*; *see also id.* ("Dr. Nathoo's claims for correction of inventorship necessitate a finding that those patents are invalid."). Because of this fact, the court could not "correct" the patents to add Dr. Nathoo as an inventor. *Id.* ("Unfortunately for Dr. Nathoo, this [c]ourt may not direct the Patent Office to correct the inventorship of patents pursuant to Section 256 when doing so would require the [c]ourt to declare the patents invalid."). The court thus dismissed Dr. Nathoo's section 256 claims with prejudice. *Id.* ("[T]o name Dr. Nathoo as an inventor on the patents at issue would

necessarily require the Court to make a finding that the patents are invalid. Thus, Dr. Nathoo may not bring claims to correct the inventorship of the patents at issue pursuant to Section 256. Accordingly, the Court dismisses Dr. Nathoo's first through seventh counterclaims with prejudice.").

   **E.** **Mhaka Has Admitted That, Because Her Alleged Conception Took Place After The Priority Date, She Cannot Be Named An Inventor**

  Mhaka has not identified and cannot identify a single case in which a district court added an inventor under section 256 based on work done after the application. Indeed, despite initially taking the position that "[w]hat Dr. Mhaka's omission may, or may not mean, to the overall vitality of the patent is a different question for a different day" and that "[w]hether her omission as an inventor creates an enablement or written description problem is not at issue in this case" (Doc. No. 31), Mhaka has now admitted that she cannot be added to the '354 and '648 patents as an inventor. Specifically, she has conceded that "35 U.S.C. § 256 cannot be used to correct the inventorship of a patent where to do so would necessitate the patent's invalidity[,]" and that "[a]dding Dr. Mhaka to the Patents would necessitate their invalidity because they would necessarily run afoul of 35 U.S.C. § 112." (Ex. 1 at ¶¶ 85-86.) In other words, Mhaka has admitted that her claim to correct inventorship is fatally flawed and should never have been threatened. Based on the applicable law and Mhaka's own admissions, summary judgment should be entered against her and in favor of GenSpera.

7

## CONCLUSION

For the reasons stated above, Plaintiff GenSpera, Inc. respectfully requests that this Court enter summary judgment in its favor.

Respectfully submitted,

/s/ Robert A. Stolworthy, Jr.
Robert A. Stolworthy, Jr. (D. Md. Bar No. 29314)
John E. Nilsson (*pro hac vice*)
Seth I. Heller (*pro hac vice*)
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
(202) 942-5000
(202) 942-5733 (fax)
Robert.Stolworthy@aporter.com
John.Nilsson@aporter.com
Seth.Heller @aporter.com

Wallace Wu (*pro hac vice*)
ARNOLD &PORTER LLP
44th Floor
777 South Figueroa Street
Los Angeles, CA 90017
(213) 243-4000
(213) 243-4199 (fax)
Wallace.Wu@aporter.com

***Counsel for Plaintiff GenSpera, Inc.***

DATED: November 20, 2012

9

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 20, 2012, I filed the foregoing Memorandum of Law in Support of GenSpera, Inc.'s Motion for Summary Judgment via the Court's CM/ECF system, which will deliver electronic notice to each party in this case.

/s/ Robert A. Stolworthy, Jr.
Robert A. Stolworthy, Jr. (D. Md. Bar No. 29314)