UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GENSPERA, INC.,<br>Plaintiff, Counterclaim-Defendant,<br><br>and<br><br>DR. JOHN ISAACS and DR. SAMUEL R. DENMEADE<br>Counterclaim-Defendants<br><br>v.<br><br>ANNASTASIAH MUDIWA MHAKA,<br>Defendant, Counterclaim-Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 12-cv-772-MJG |

## REPLY TO COUNTERCLAIMS FILED BY ANNASTASIAH MUDIWA MHAKA

GenSpera, Inc., Dr. Samuel Denmeade, and Dr. John Isaacs (collectively "Counterclaim-Defendants"), hereby reply to Defendant and Counterclaim-Plaintiff's Annastasiah Mudiwa Mhaka's ("Dr. Mhaka's") Counterclaims:

1.      Counterclaim-Defendants deny that Dr. Mhaka has any rights or made any inventive contribution to the inventions claimed in U.S. Patent Nos. 7,468,354 (the " '354 Patent") or 7,767,649 (the " '649 Patent") (collectively, "the Patents"). Counterclaim-Defendants admit that Dr. Mhaka participated in the synthesis of a compound called AMM9 under the direction and guidance of Dr. Denmeade and Dr. Isaacs. Counterclaim-Defendants also admit that Dr. Mhaka is not a named inventor on the Patents. Counterclaim-Defendants deny the remaining allegations in Paragraph 1.

1

2.      Counterclaim-Defendants admit that this court has subject matter jurisdiction over Dr. Mhaka's counterclaim.  Counterclaim Defendants further admit that this court is the proper venue.  Counterclaim Defendants deny the remainder of the allegations in Paragraph 2.

3.      Admitted.

4.      Counterclaim-Defendants admit that Dr. Mhaka has a Ph.D. in Cellular and Molecular Medicine from the Johns Hopkins School of Medicine, and a B.Sc. in Chemistry from the University of Pittsburgh.  Counterclaim-Defendants lack information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 4, and on that basis, deny the remaining allegations in Paragraph 4.

5.      Counterclaim-Defendants lack information sufficient to form a belief as to the truth of the allegations in Paragraph 5, and on that basis, deny the allegations in Paragraph 5.

6.      Counterclaim-Defendants admit that Dr. Mhaka is currently employed by Johns Hopkins University.  Counterclaim-Defendants lack information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 6, and on that basis, deny the remaining allegations in Paragraph 6.

7.      Counterclaim-Defendants admit that GenSpera is a Delaware corporation with its principal place of business in San Antonio, Texas.  Counterclaim-Defendants also admit that Drs. Isaacs and Denmeade are consultants to the company and that they live in Maryland and work in Baltimore.  Counterclaim-Defendants deny the remaining allegations in Paragraph 7.

8.      Counterclaim-Defendants admit that GenSpera is a publicly traded company.

9.      Counterclaim-Defendants admit has that GenSpera developed a series of therapies based on a proprietary target-activated pro-drug technology platform and that, as a part of this

process, it has shepherded one drug candidate through Phase I and Phase II clinical trials.
Counterclaim-Defendants further admit that GenSpera has discussed licensing intellectual
property rights related to proprietary target-activated prodrug technology platform with third
parties.

10.     Counterclaim-Defendants admit that the compound G-202 is a lead drug
candidate in its target-activated prodrug technology program and that G-202 has been the subject
of Phase I clinical trials.

11.     Counterclaim-Defendants admit that the compound G-202 is a lead drug
candidate in its target-activated prodrug technology program .  Counterclaim-Defendants further
admit that G-202 consists of 12ADT attached to a targeting peptide and that the targeting peptide
is cleaved by an enzyme selectively located in the cell membranes of certain cells, which causes
the release of the 12ADT=Asp cell killing agent which can then be taken in by  the target cell.
Counterclaim-Defendants admit that GenSpera has described the 12ADT portion of the molecule
as analogous to a "grenade" and the peptide portion as analogous to a grenade's "pin."
Counterclaim-Defendants further admit that when G-202 comes into contact with the target
antigen, the peptide is cleaved, and 12ADT becomes cytotoxic.

12.     Admitted.

13.     Counterclaim-Defendants admit that Dr. Mhaka participated in the synthesis of G-
202 under the direction and supervision of Dr. Denmeade and Dr. Isaacs.  Counterclaim-
Defendants also admit that G-202 has been referred to as AMM9 consistent with customary
practice allowing experimental molecules to be designated by lab chemists who synthesized
them.  Counterclaim-Defendants deny the remaining allegations in Paragraph 13.

14.     Admitted.

15.     Admitted.

16.     Admitted.

17.     Admitted.

18.     Admitted.

19.     Counterclaim-Defendants admit that there are no curative treatments for recurring metastatic prostate cancer.  Counterclaim-Defendants are without information sufficient to ascertain the truth of the allegation that there are no "effective" treatments for recurring metastatic prostate cancer, and on that basis Counterclaim-Defendants deny this allegation. Counterclaim-Defendants admit the remaining allegations in Paragraph 19.

20.     Counterclaim-Defendants admit that the effectiveness of conjoint therapy depends, in part, on the presence of absence of indolent cancer cells.  Counterclaim-Defendants deny the remaining allegations in Paragraph 20 to the extent that they grossly oversimplify the underlying molecular mechanisms of prostate cancer.

21.     Counterclaim-Defendants admit that there are no curative treatments for recurring metastatic prostate cancer and that higher concentrations of standard chemotherapeutic agents result in greater systematic toxicity, *i.e*., at these concentrations the agent begins to kill normal cells indiscriminately.  Counterclaim-Defendants deny the remaining allegations in Paragraph 21.

22.     Counterclaim-Defendants admit that prostate specific membrane antigen ("PSMA") is a transmembrane glycoprotein with exo-cellular exposure.  Counterclaim-Defendants admit that antigens expressed on cellular surfaces may be receptors, and a ligand

4

may bind to the receptor on the cellular surface.  Counterclaim-Defendants admit that antigens may also serve a transport function, facilitating the transport of substance across the cell membrane.  Counterclaim-Defendants admit that the exact function of PSMA is not understood, and that PSMA's coding sequence shares some similarities with some known receptors and some transport molecules.

23.     Counterclaim-Defendants deny the allegation insofar as it suggests that PSMA is generally expressed in the vasculature of prostate tumors.

24.     Counterclaim-Defendants admit that PSMA is now known to be closely associated with a variety of cancer cell types.  Counterclaim-Defendants deny the remaining allegations in Paragraph 24 to the extent they grossly oversimplify the considerations of chemotherapeutics.

25.     Admitted.

26.     Admitted.

27.     Counterclaim-Defendants admit the first two sentences of Paragraph 27. Counterclaim-Defendants deny the accuracy of the third sentence as worded.

28.     Counterclaim-Defendants admit that thapsigargin is hydrophobic and not readily soluble in aqueous media.  Counterclaim-Defendants deny the remaining allegations in Paragraph 28.

29.     Counterclaim-Defendants admit the allegations in Paragraph 29 to the extent they represent a theoretical description of chemotherapy efficacy.  The allegations of Paragraph 29 do not identify any particular drug, and on that basis Counterclaim-Defendants deny the allegations in Paragraph 29 to the extent they represent a description of any particular drug.

30.     Denied.

31.     Counterclaim-Defendants deny the allegations of Paragraph 31 as worded.

32.     Admitted.

33.     Admitted.

34.     Counterclaim-Defendants admit that Dr. Isaacs and Dr. Denmeade developed a prodrug platform with a least four different models, one of which targets PSMA.  Counterclaim-Defendants deny that the prodrug platform is limited to PSMA or only to prostate cancer cells as its target.  Counterclaim- Defendants further deny that the PSMA-activated prodrug is limited to prostate cancer cells as its target.  Counterclaim-Defendants admit the remaining allegations in Paragraph 34.

35.     Counterclaim-Defendants admit that one component of the prodrug was to be 8-*O*-(12Aminododecanoyl)-8-*O*-debutanoylthapsigargin ("12ADT"), but denies that the prodrugs was limited to this one component.  Counterclaim-Defendants admit the remaining allegations in Paragraph 35.

36.     Counterclaim-Defendants deny that the ability to attach a peptide was of concern to Drs. Isaacs or Denmeade.  Counterclaim-Defendants admit that Drs. Isaacs and Denmeade sought to attach a peptide chain that would be cleaved specifically by PSMA and also render the prodrug candidate soluble.  The remaining allegations in Paragraph 36 are not susceptible  to admission or to denial.

37.     Counterclaim-Defendants admit that Dr. Isaacs and Dr. Denmeade recognized that PSMA was an exopeptidase that has one catalytic site that can recognize alpha- and gamma-linked acidic amino acids and that they sought to design a peptide sequence that would uniquely

target PSMA. Counterclaim-Defendants admit that PSMA has the catalytic properties of an N-acetylated α-linked di-peptidase ("NAALADase"), so will efficiently cleave alpha-linked di-peptides, and of a pteroyl poly-γ-glutamyl carboxypeptidase, allowing for the cleavage of gamma-linked peptides. Counterclaim-Defendants deny the remaining allegations in Paragraph 37.

38.     Counterclaim-Defendants admit the allegations in Paragraph 38 and admit that it was important that the prodrug be a substrate for PSMA and not be hydrolyzed by GGH when GGH is present in the blood.

39.     Denied.

40.     The allegations in Paragraph 40 are worded in a such a manner that Counterclaim-Defendants can neither admit nor deny the allegations in Paragraph 40. To the extent that an answer is required, Counterclaim-Defendants deny the allegations in Paragraph 40.

41.     Counterclaim-Defendants admit that a high rate of PSMA hydrolysis indicated that the peptide sequence was being effectively cleaved sequentially by PSMA down to the active toxin. Counterclaim-Defendants further admit that a high plasma yield indicated that the peptide was being effectively converted to the active toxin by blood enzymes. Counterclaim-Defendants deny the remaining allegations in Paragraph 41.

42.     Counterclaim-Defendants admit the results of the tests identified in Paragraph 42.

43.     Denied.

44.     Denied.

45.     Counterclaim-Defendants admit that Dr. Isaacs and Dr. Denmeade were Dr. Mhaka's mentors (but not "advisors" as that terms is used at Johns Hopkins School of Medicine)

after she joined Johns Hopkins School of Medicine's Cellular and Molecular Medicine Department in 1999 as a doctoral candidate.  Counterclaim-Defendants admit the remaining allegations in Paragraph 45.

46.    Counterclaim-Defendants admit that Dr. Isaacs and Dr. Denmeade were Dr. Mhaka's mentors (but not "advisors" s that terms is used at Johns Hopkins School of Medicine). The remaining allegations in Paragraph 46 can be neither admitted nor denied by the Counterclaims-Defendants.

47.    Denied.

48.    Counterclaim-Defendants admit that Dr. Mhaka synthesized two compounds that she referred to as "AMM1" and "AMM2."  Counterclaim-Defendants admit that Dr. Denmeade directed Dr. Mhaka to synthesize AMM1.  Counterclaim-Defendants can neither admit nor deny the allegation that "Dr. Mhaka evaluated the hydrolysis profiles for both these compounds, and was shocked by the results she obtained."  Counterclaim-Defendants deny the remaining allegations in Paragraph 48.

49.    Counterclaim-Defendants admit the results of the hydrolysis experiments. Defendants deny that AMM1 was a "lead drug" of her mentors.  Counterclaim-Defendants deny the allegations of Paragraph 49 relating to the plasma stability of AMM1 and AMM2 insofar as the studies in question were not done at the same time as the referenced hydrolysis experiments.

50.    Counterclaim-Defendants admit that Dr. Mhaka discussed experimentation results with Dr. Denmeade and/or Dr. Isaacs, her mentors.  Counterclaim-Defendants further admit that conversations between Dr. Mhaka and Dr. Denmeade and/or Dr. Isaacs could, at times, involve 12Adt linked to Glu*Glu*Glu*Glu*Glu.  Counterclaim Defendants also admit that at least some

literature suggested that a 12Adt/peptide conjugate with a non-Asp-Glu capped amino acid could be an effective PSMA substrate but also susceptible to non-PSMA specific hydrolysis. Counterclaim-Defendants also admit that Dr. Isaacs and/or Dr. Denmeade conceived "AMM5," a 12Adt linked to Glu*Glu*Glu*Glu*Glu.  Counterclaim Defendants deny the remaining allegations in Paragraph 50.

51.     Counterclaim-Defendants admit that, at the direction of Dr. Isaacs and/or Dr. Denmeade, Dr. Mhaka synthesized compounds that she referred to as "AMM3," "AMM4," "AMM5," "AMM7," and "AMM8."  Counterclaim-Defendants also admit that Dr. Mhaka would conduct hydrolysis profile experiments at and under the direction of Dr. Isaacs and Dr. Denmeade.  Counterclaim-Defendants deny the remaining allegations in Paragraph 51.

52.     Denied.

53.     Counterclaim-Defendants admit that Drs. Isaacs and Denmeade had thought that long chains of gamma-linked glutamates represented particularly good PSMA substrate. Counterclaim-Defendants deny the remaining allegations of Paragraph 53.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Counterclaim-Defendants admit that results observed from AMM9 were promising, and that the compounds referred to as AMM9 and AMM2 became the lead prodrug candidates on which further tests were to be performed.  Counterclaim-Defendants admit that the compound referred to as AMM9 exhibited the highest therapeutic index in two cell-lines, but

deny that the animal prostate cancer studies were completed during Dr. Mhaka's tenure in the lab and further deny that Dr. Mhaka had any participation in those studies.

58.    Denied.

59.    Denied.

60.    Counterclaim-Defendants admit that Dr. Mhaka's dissertation describes certain work undertaken during the development, synthesis, and characterization of compounds in the what she referred to as the "AMM series."  Counterclaim-Defendants also admit that Dr. Mhaka synthesized and characterized compounds in the "AMM series" at the direction of Dr. Isaacs and Dr. Denmeade.  Counterclaim-Defendants deny the remaining allegations in Paragraph 60.

61.    Counterclaim-Defendants admit that the '354 Patent has two claims. Claim 1 is directed to a genus of prodrug compounds (not a single prodrug), and Claim 2 is directed to a pharmaceutical preparation containing a prodrug according to Claim 1.

62.    Counterclaim-Defendants admit that issued claim 1 of the '354 patent was submitted in response to a restriction requirement dated November 3, 2006.  Counterclaim-Defendants further admit that this submission took place six years after the filing of U.S. provisional application no. 60/250,543, which was identified in the application that issued as the '354 patent as relevant to the priority date of the inventions described therein.

63.    Counterclaim-Defendants admit that claim 1 of the '354 patent covers G-202, which has been referred to as "AMM9."  Insofar as paragraph 63 alleges, suggests or otherwise implies that prior claims of the application did not claim or cover G-202, the remaining allegations of paragraph 63 are denied.

64.     Counterclaim-Defendants admit that Claim 1 claims a genus of compounds comprising 12ADT linked to the aspartate residue of a pentapeptide having the sequence Asp-Glu*Glu*Glu*Glu where at least one of the bonds designated with a "*" is a gamma linkage. Counterclaim Defendants further admit that the claim does requires only a single gamma linkage between glutamates in the pentapepetide and does not require any specific type of linkage between the remaining glutamates.  Counterclaim-Defendants further admit that the claim does not explicitly require a specific type of linkage between the 12ADT portion of the molecule and the aspartate of the pentapeptide.  The remaining allegations in paragraph 64 are admitted.

65.     Denied.

66.     Counterclaim-Defendants admit that none of the compounds covered by claim 1 of the '354 patent possess an "Asp-Glu cap."  Counterclaim-Defendants deny all remaining allegations in Paragraph 66.

67.     Denied.

68.     Counterclaim-Defendants admit that Claim 1 of the '648 patent is independent and that the remaining claims all depend from Claim 1 of the '648 patent.  Counterclaim-Defendants deny all remaining allegations in Paragraph 68.

69.     Admitted.

70.     Counterclaim-Defendants admit that PSMA expression had been previously documented in the neovasculature of various cancers.  Counterclaim-Defendants deny the remaining allegations of Paragraph 70.

71.     Denied.

72.     Counterclaim-Defendants admit that Dr. Mhaka prepared a poster presentation and that Dr. Denmeade instructed her to omit the AMM9 structure out of concern that the structure might not have been disclosed in the pending patent application and that, as a result, patent counsel would need to approve any such disclosure.  Counterclaim-Defendants also admit the allegations in the last sentence of Paragraph 72.  Counterclaim-Defendants deny the remaining allegations in Paragraph 72.

73.     Counterclaim-Defendants admit that a May 12, 2004 e-mail authored by Dr. Denmeade states that "all of the current work is really covered in the pending PSMA patent." Counterclaim-Defendants deny the remaining allegations in Paragraph 73.

74.     Counterclaim-Defendants admit that Dr. Denmeade wrote a May 12, 2004 e-mail to Dr. Craig Dionne.  Counterclaim-Defendants also admit that Dr. Craig Dionne is GenSpera's C.E.O and was GenSpera's C.E.O. in 2004.  Counterclaim-Defendants further admit that Dr. Dionne confirmed to Dr. Denmeade that "all the current work is really covered" by the application that would issue as the '354 patent.

75.     Counterclaim-Defendants are not in a position to admit or deny the allegations of paragraph 75 to the extent that those allegations turn on Dr. Mhaka's subjective beliefs. Counterclaim-Defendants deny that it would have been reasonable, if Dr. Mhaka had in fact subjectively believed that she had conceived of a novel invention, for Dr. Mhaka to agree without investigation or inquiry that such an invention was covered by an application to which she had not contributed.

76.     Counterclaim-Defendants admit that Dr. Denmeade and Dr. Isaacs authored letters of recommendation containing the quoted text in Paragraph 76.  Counterclaim-Defendants

also admit that Dr. Denmeade and Dr. Isaacs were Dr. Mhaka's mentors and were involved with her dissertation and supported acceptance of Dr. Mhaka's dissertation for publication. Counterclaim-Defendants deny the remaining allegations in Paragraph 76.

77.     Counterclaim-Defendants admit that the quoted passages are from e-mails authored by Dr. Denmeade.  Counterclaim-Defendants deny the remaining allegations in Paragraph 77.

78.     Denied.

79.     Denied.

80.     Counterclaim-Defendants admit that U.S. provisional application no. 60/250,543 was filed on December 1, 2000.

81.     Counterclaim-Defendants admit that the application that issued as the '354 patent was filed on May 28, 2003 and that it represented the U.S. national phase entry of PCT/US01/45100, which was filed on November 30, 2001.  Counterclaim-Defendants also admit that the PCT application identified U.S. provisional application no. 60/250,543 as relevant to the priority date of the inventions described therein.  Counterclaim-Defendants admit that Dr. Mhaka is not identified as an inventor on the '354 patent.

82.     Admitted.

83.     Counterclaim-Defendants deny that on November 3, 2006 new matter was added in the response to a restriction requirement imposed on July 3, 2006.  Counterclaim-Defendants admit that both the '354 patent and the '648 patent claim priority dates based on the PCT/US01/45100, which was filed in November of 2001.  Counterclaim-Defendants further admit that the '354 patent, the '648 patent and PCT/US01/451001 all identify U.S. provisional

application no. 60/250,543 as relevant to the priority date of the inventions described therein. Counterclaim-Defendants deny the remaining allegations in Paragraph 83.

84.     Counterclaim-Defendants admit that the disclosures of the '354 patent and the '648 patent, which are in all material respects identical to the disclosure of PCT/US01/451001, pre-date Dr. Mhaka's efforts as a graduate student under the direction of Drs. Isaacs and Denmeade.  Counterclaim-Defendants deny the remaining allegations in Paragraph 84.

85.     Counterclaim-Defendants admit that Dr. Mhaka has never had a valid cause of action under 35 U.S.C. § 256 for correction of inventorship with respect to the '354 patent or the '648 patent.  Counterclaim-Defendants further admit that 35 U.S.C. § 256 cannot be invoked to correct the inventorship of an issued patent when its application in so doing would necessitate the invalidation of the patent.  Counterclaim-Defendants deny the remaining allegations in Paragraph 85.

86.     Counterclaim-Defendants admit that Dr. Mhaka has never had a valid cause of action under 35 U.S.C. § 256 for correction of inventorship with respect to the '354 patent or the '648 patent.  Counterclaim-Defendants further admit that 35 U.S.C. § 256 cannot be invoked to correct the inventorship of an issued patent when its application in so doing would necessitate the invalidation of the patent.  Counterclaim Defendants deny the remaining allegations in Paragraph 86.

87.     Counterclaim-Defendants deny the first and last sentences of Paragraph 87. Counterclaim-Defendants further deny that GenSpera has "admitted" in any context that "Dr. Mhaka contributed to the patents, in a significant, material, inventive way."  Counterclaim-Defendants admit the remaining allegations of Paragraph 87.

88.    Counterclaim-Defendants can neither admit nor deny the allegations of paragraph 88.

89.    Denied.

90.    Counterclaim-Defendants lack information sufficient to form a belief as to whether compounds other than AMM9 and AMM4  that are covered by Claim 1 of the '354 Patent have ever been synthesized.  Counterclaim-Defendants deny that the compound that has been referred to as "AMM4 does not "work."  The final sentence of paragraph 90 is also denied.

91.    Denied.

92.    Denied.

93.    Denied.

94.    Counterclaim-Defendants admit that an actual reduction to practice of at least AMM9 was not complete until 2002-2003, when AMM4 and AMM9 were reduced to practice by Dr. Mhaka under the direction of Dr. Isaacs and Dr. Denmeade.  Counterclaim-Defendants deny the remaining allegation in Paragraph 94.

95.    Denied.

96.    Admitted.

97.    Counterclaim-Defendants admit that Johns Hopkins University had an Intellectual Property Policy in place while Dr. Mhaka was working under the supervision of Dr. Isaacs and Dr. Denmeade.  Counterclaim-Defendants are not in a position to admit or deny the remaining allegations of paragraph 97.

98.    Admitted.

99.     Counterclaim-Defendants admit that Drs. Denmeade and Isaacs entered into a binding letter of intent with GenSpera.  Counterclaim-Defendants also admit that GenSpera was formed in 2003 and has since entered into an exclusive license to the '354 patent and the '648 patent.  Counterclaim-Defendants deny the remaining allegations in Paragraph 99.

100.    Counterclaim-Defendants admit that Drs. Isaacs and Denmeade hold stock in GenSpera and serve on GenSpera's Scientific Advisory Board.  Counterclaim-Defendants further admit that Dr. Isaacs is GenSpera's Chief Scientific Advisor and Dr. Denmeade is GenSpera's Chief Medical Advisor.  To the extent that any remaining allegations of 100 are susceptible to admission or denial, Counterclaim-Defendants deny the remaining allegations in Paragraph 100.

101.    Denied.

102.    Counterclaim-Defendants admit that GenSpera has had involvement with the prosecution of the Patents.  Counterclaim-Defendants further admit that attorneys retained by GenSpera were involved in the prosecution of the applications that issued as the '354 patent and the '648 patent and that such attorneys consulted with Drs. Denmeade and Isaacs.  Counterclaim-Defendants deny the remaining allegations in Paragraph 102.

103.    Counterclaim-Defendants admit that G-202 is covered by the claims of the '354 patent and the '648 and that GenSpera's rights to the inventions of those patents were received from Drs. Isaacs and Denmeade in return for monies paid by GenSpera which the co-inventors passed on to JHU for reimbursement of past patent costs in order to finalize the assignment.  Counterclaim-Defendants further admit that G-202 is in Phase I clinical trials and that G-202 represents GenSpera's "lead drug" candidate.  Counterclaim-Defendants further admit that G-202 has been referred to as "AMM9."

104.    Denied.

## FIRST CLAIM FOR RELIEF

105.    Counterclaim-Defendants incorporate by reference their responses to Paragraphs 1 through 104 above.

106.    Denied.

107.    Denied.

108.    Denied.

109.    Denied.

110.    Denied.

111.    Denied.

112.    Denied.

## SECOND CLAIM FOR RELIEF

113.    Counterclaim-Defendants incorporate by reference their responses to Paragraphs 1 through 112 above.

114.    Denied.

115.    Counterclaim-Defendants  can neither admit nor deny the allegations of the first sentence of Paragraph 115.  Counterclaim-Defendants deny the allegations of the second sentence of Paragraph 115.

116.    Denied.

117.    Denied.

118.    Denied.

119.    Denied.

120.    Denied.

### THIRD CLAIM FOR RELIEF

121.    Counterclaim-Defendants incorporate by reference their responses to Paragraphs 1 through 120 above.

122.    Denied.

123.    Denied.

124.    Denied.

### COUNTER-DEFENDANTS' AFFIRMATIVE DEFENSES

Counterclaim-Defendants allege the following facts in support of their affirmative defenses:

### Statute Of Limitations, Laches And Unreasonable Delay

1.      Dr. Mhaka's claim of conversion is premised on Counterclaim-Defendants supposed wrongful conduct in amending or allegedly participating in the amendment of the pending claims of the application that would issue as the '354 patent to claim a prodrug comprising 8-O-debutanoylthapsigargin (12ADT) linked to the aspartic acid of a peptide having the sequence Asp-Glu*Glu*Glu*Glu, wherein at least one of the bonds designated with * is a gamma carboxy linkage.

2.      Dr. Mhaka's claim of constructive fraud is premised on Counterclaim-Defendants supposed wrongful conduct in amending or allegedly participating in the amendment of the pending claims of the application that would issue as the '354 patent to claim a prodrug comprising 8-O-debutanoylthapsigargin (12ADT) linked to the aspartic acid of a peptide having

the sequence Asp-Glu*Glu*Glu*Glu, wherein at least one of the bonds designated with * is a gamma carboxy linkage.

3.      Dr. Mhaka's claim of unjust enrichment is premised on Counterclaim-Defendants supposed wrongful conduct in amending or allegedly participating in the amendment of the pending claims of the application that would issue as the '354 patent to claim a prodrug comprising 8-O-debutanoylthapsigargin (12ADT) linked to the aspartic acid of a peptide having the sequence Asp-Glu*Glu*Glu*Glu, wherein at least one of the bonds designated with * is a gamma carboxy linkage.

4.      Prior to Dr. Mhaka's graduation from the Johns Hopkins School of Medicine in 2005, Dr. Mhaka knew of the existence of the patent application that would issue as the '354 patent.

5.      The prosecution history of the application that issued as the '354 patent became public on February 12, 2004.

6.      The aforementioned amendment became public on November 3, 2006 when it was made.

7.      The prosecution of the application that would issue as the '648 patent became public on June 25, 2009.

8.      The '354 patent issued on December 23, 2008.

9.      The applicable statute of limitations for conversion in Maryland is three years from the date the action accrued.

10.      The applicable statute of limitations for constructive fraud in Maryland is three years from the date the action accrued.

11.     The applicable statute of unjust enrichment for unjust enrichment in Maryland is three  years from the date the cause of action accrued.

12.     Dr. Mhaka delayed in asserting her claims of conversion, unjust enrichment and constructive fraud until November 1, 2012.

13.     Dr. Mhaka's claim of conversion is barred, in whole or in part, by the applicable statute of limitations.

14.     Dr. Mhaka's claim of unjust enrichment is barred, in whole or in part, by the applicable statute of limitations

15.     Dr. Mhaka's claim of constructive fraud is barred, in whole or in part, by the applicable statute of limitations.

16.     Dr. Mhaka's claim of conversion is barred, in whole or in part, under the doctrine of laches and unreasonable delay.

17.     Dr. Mhaka's claim of unjust enrichment is barred, in whole or in part, under the doctrine of laches and unreasonable delay.

18.     Dr. Mhaka's claim of constructive fraud is barred, in whole or in part, under the doctrine of laches and unreasonable delay.

## Preemption

19.     Dr. Mhaka's claims of conversion, unjust enrichment and constructive fraud depend on her allegations that the core of Mhaka's tort claims is that, during the prosecution of the application that would issue as the '354 patent, the Counterclaim-Defendants wrongfully submitted an amended claim (or wrongfully participated in the amendment of a claim) covering a subgenus of compounds comprising 8-O-debutanoylthapsigargin (12ADT) linked to the aspartic

acid of a peptide having the sequence Asp-Glu*Glu*Glu*Glu, wherein at least one of the bonds designated with * is a gamma carboxy linkage.

20.     Dr. Mhaka further alleges that Counterclaim-Defendants Isaacs and Denmeade wrongfully represented to the Patent Office that, in making this amendment, no new matter had been added to the proposed claim.

21.     Counter-Defendants alleged conduct as described in Paragraphs in 19-20 of this pleadings and in Dr. Mhaka's counterclaims, if it occurred, would have been protected and governed by federal patent law.

22.     Dr. Mhaka's claims of conversion, unjust enrichment, and constructive are preempted by federal patent law.

### **PRAYER FOR RELIEF**

WHEREFORE, having replied to the Counterclaim-Plaintiff's counterclaims, the Counterclaim-Defendants pray that the Court:  (a) enter judgment in favor of Counterclaim-Defendants and dismiss the Counterclaim-Plaintiff's counterclaims with prejudice; (b) deny the Counterclaim-Plaintiff's prayer for relief in its entirety; (c) award Counterclaim-Defendants their costs and expenses incurred in the defense of this action; and (d) grant the Counterclaim-Defendants such other and further relief as is just and proper.

DATED: June 3, 2013

                                        Respectfully submitted,


                                        /s/ Robert A. Stolworthy, Jr.
                                        Robert A. Stolworthy, Jr. (D. Md. Bar No. 29314)
                                        John E. Nilsson (*pro hac vice*)
                                        Seth I. Heller (*pro hac vice*)

ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
(202) 942-5000
(202) 942-5733 (fax)
Robert.Stolworthy@aporter.com
John.Nilsson@aporter.com
Seth.Heller @aporter.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2013, I caused a copy of the foregoing to be filed via the Court's CM/ECF system, which electronically delivered notice to all parties in this case.


/s/ Robert A. Stolworthy, Jr.
Robert A. Stolworthy, Jr.