**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| GENSPERA, INC.,<br>Plaintiff, Counterclaim Defendant | * | |
| | * | Civil Action No. MJG-12-772 |
| | * | |
| | * | |
| | * | |
| v. | * | |
| ANNASTASIAH MUDIWA MHAKA,<br>Defendant, Counterclaim Plaintiff | * | |
| * * * * * * | * * * * * * * | |
| ANNASTASIAH MUDIWA MHAKA,<br>Counterclaim Plaintiff | * | Civil Action No. MJG-12-3302 |
| v. | * | |
| GENSPERA, INC., DR. JOHN ISAACS and<br>DR. SAMUEL DENMEADE,<br>Counterclaim Defendants | * | |
| | * | |
| | * | |
| | * | |

*************************************************************************

**MEMORANDUM IN SUPPORT OF COUNTERCLAIM DEFENDANTS DENMEADE'S AND ISAACS' MOTION FOR SUMMARY JUDGMENT**

Counterclaim Defendants Dr. John Isaacs and Dr. Samuel Denmeade respectfully submit this memorandum in support of their motion for summary judgment.[1]

---

[1] Plaintiff and Counterclaim Defendant GenSpera, Inc. ("GenSpera") intends to file a separate motion for summary judgment, but joins in the present motion for summary judgment brought by Counterclaim Defendants Isaacs and Denmeade.

## INTRODUCTION

Counterclaim Plaintiff Annastasiah Mudiwa Mhaka ("Dr. Mhaka") asserts three tort claims against the Counterclaim Defendants: (1) conversion, (2) "constructive fraud," and (3) unjust enrichment. Each is premised on the Counterclaim Defendants' supposed wrongful conduct in amending (or participating in the amendment of) a claim pending in the application that would issue as U.S. Patent No. 7,468,354 ("the '354 patent") (and thereby, according to Dr. Mhaka, improperly incorporating her work into a pending application on which she was not an inventor). The amendment in question occurred on November 3, 2006.

As the Court noted at the January 24, 2013 hearing in this matter, the claims thus raise "a severe summary judgment question." (Jan. 24, 2013 Hr'g Tr. (Heller Decl.[2] Ex. A) at 36:7-8.) Articulating this question, the Court stated, "I think that there are very definitely limitation issues that I think exist — that I think you have to file." (*Id*.)[3] The Court suggested that such statute of limitations issues would best be addressed through summary judgment practice. *(Id*. at 39:11-23.[4]) As shown below, Dr. Mhaka's claims do raise "a severe summary judgment question" — one that they cannot withstand. The evidence shows that the claims accrued by November 3,

---

[2] The exhibits referenced herein are attached to the Declaration Of Seth I. Heller In Support Of Counterclaims Defendants Isaacs' and Denmeade's Motion For Summary Judgment ("Heller Decl.").

[3] The Court further explained, "I think we have discussed a bunch of other issues that seem to be a concern but *clearly I think there are limitation issues*." (Heller Decl. Ex. A at 36:15-16 (emphasis added).)

[4] The Court indicated that the Counterclaim Defendants would be free to file that motion when they deemed most appropriate: "I think you could file a summary judgment motion whenever you want . . . . I will leave it to you when you want to file that motion . . . ." (Heller Decl. Ex. A at 39:17-20.) Hoping to obviate the unnecessary expenses of further expert reports, expert discovery, and summary judgment practice, Counterclaim Defendants have elected to file their motion for summary judgment on statute of limitations issues at the close of fact discovery, but in advance of the Court's April 15, 2014 summary judgment deadline. (Dkt. 68 at 2.)

2006, and that Dr. Mhaka knew or should have known of them by the close of 2008 at the very latest. Nonetheless, she waited until November 1, 2012, to assert them. Because the claims are subject to Maryland's three-year statute of limitations, they are barred, and summary judgment should be entered in favor of the Counterclaim Defendants.

## BACKGROUND

The '354 Patent and U.S. Patent No. 7,767,648 ("the '648 patent") relate back to a common patent application — the November 30, 2001 PCT Application. The November 30, 2001 PCT Application, which relates back to a December 4, 2000 Provisional Application, was published internationally in June of 2002. In its description of the inventors' PSMA-targeted prodrug, the November 30, 2001 PCT Application is virtually identical to the common specification of the issued '354 patent and '648 patent.

Dr. Mhaka admits to having read both the provisional application and the PCT application in the 2002-2003 period. (Mhaka Dep. Vol. I (Heller Decl. Ex. B) at 114:20-116:12, 149:6-21; Mhaka Dep. Vol. II (Heller Decl. Ex. C) at 330:24-333:19.) In June of 2004, Dr. Mhaka informed Dr. Denmeade that she thought she should be included as an inventor on the pending PSMA-targeted prodrug patent. (Heller Decl. Ex. C at 338:3-13, 510:6-24.) In response, Dr. Denmeade informed her that he did not believe she could be included as an inventor, "since all of the current work is really covered in the pending PSMA patent." (MHAKA001098-99 (Heller Decl. Ex. D).) Dr. Mhaka has testified that, having read the patent application, she disagreed. (Heller Decl. Ex. C at 333:20-334:1.) As she wrote four years later, "when the provisional was brought to my attention I reviewed it and was disturbed that my name was not included." (Heller Decl. Ex. D.)

3

In 2005, Dr. Mhaka joined the venture capital firm Acidophil LLC as a consultant and later a project manager. (Heller Decl. Ex. B at 39:18-40:14.) One of her responsibilities there was to conduct intellectual property research, and in connection with this task she conducted searches of patent databases. (*Id.* at 43:15-24, 50:1-17; Goelet Dep. (Heller Decl. Ex. E) 40:12-41:20.) Dr. Mhaka also drafted multiple patent applications, both for herself and for others. (Heller Decl. Ex. B at 56:24-62:10, 71:18-24.) In June of 2008, she conducted an internet search to determine the status of Drs. Denmeade's and Isaacs' pending PSMA-targeted prodrug patent application. (Heller Decl. Ex. C at 392:10-394:23, 435:2-13.) Complaining to her employer (and confidant), she wrote that "[t]he patent still excludes me and still reads pending." (Heller Decl. Ex. D.) Two weeks later, she followed up, noting that "AMM9 [which she alleged that she designed] is the lead prodrug candidate for GenSpera." (PG000027-28 (Heller Decl. Ex. F).) She then added, "if AMM9 was added to the first patent, I feel I should be included as co-inventor." (*Id.*)

In August of 2008, Dr. Mhaka contacted Johns Hopkins to determine whether the university could address her concerns. (Heller Decl. Ex. C at 437:3-20.) In response, the Technology Transfer office explained that the patent had been assigned to Drs. Denmeade and Isaacs, and then licensed to GenSpera. (MHAKA001077-79 (Heller Decl. Ex. G).) The university officials then recommended that Dr. Mhaka engage a lawyer. (*Id.*) Writing to her employer on October 15, 2008, Dr. Mhaka agreed, "I think I should go ahead and get counsel." (*Id.*)

4

As Dr. Mhaka herself admitted, he or she could have accessed the prosecution history and reviewed the November 3, 2006 amendment.[5]  (Heller Decl. Ex. C at 396:8-23.)  And two months later (in December of 2008), the 354 application published, showing the pending claim.  Yet Dr. Mhaka waited four more years to bring her tort claims against GenSpera and Drs. Isaacs and Denmeade.  In the interim, the three Counterclaim Defendants continued their efforts to shepherd G202 through early phase clinical trials.

## ARGUMENT

**A.     Because Dr. Mhaka's Tort Claims Accrued More Than Three Years Ago, They Are Barred By Maryland's Statute Of Limitations**

Under Maryland law, "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."  Md. Code, Cts. & Jud. Proc. § 5-101.  This three-year statute of limitations applies to claims of conversion, constructive fraud, and unjust enrichment.  *See Osborn v. Swetnam*, 156 A.2d 654, 656 (Md. 1959) (holding the three-year limitations period applicable to a conversion claim); *Maltas v. Maltas*, 197 F. Supp. 2d 409, 423 (D. Md. 2002) (holding the three-year limitations period applicable to claims of constructive fraud and unjust enrichment).

The statute of limitations period "begins to 'accrue' on the date of the wrong."  *Murphy v. Merzbacher*, 697 A.2d 861, 864 (Md. 1997).  Thus, a claim for conversion accrues on the date of the conversion.  *See, e.g.*, *Gillen v. Maryland Nat. Bank*, 333 A.2d 329, 336 (Md. 1975) (holding that claim for conversion against bank that failed to process commercial instrument was barred

---

[5]     The prosecution history of the application that issued as the '354 patent became public on February 12, 2004.  The amendment to Claim 1 of the '354 patent became public on November 3, 2006, the day on which it was made.  The prosecution of the application that would issue as the '648 patent became public on June 25, 2009.

5

under the statute of limitations when not brought until three and a half years after bank received the instrument). A claim for "constructive fraud" also accrues on the date of the supposed wrong. *See Murphy*, 697 A.2d at 864.[6] Here, the supposed wrong was the November 3, 2006 amendment.[7] As Dr. Mhaka's counsel explained when asked what conduct gave rise to her tort claim of conversion, "they shouldn't have added a claim for AM[M]9 in 2006." (Heller Decl. Ex. A at 28:3-4.) Similarly, when asked by the Court when the Counterclaim Defendants supposedly committed "constructive fraud," Dr. Mhaka's counsel answered, "[i]n 2006 when they took her AMM9 and plugged it into a pre-existing application to which she could not be added as a co-inventor which would have cured her and given her property rights." (*Id*. at 29:13-16.)[8]

A claim for unjust enrichment accrues whenever the plaintiff confers a benefit that is unjustly retained by the defendant. *See, e.g.*, *Ahmad v. Eastpines Terrace Apartments, Inc.*, 28 A.3d 1, 9 (Md. Ct. Spec. App. 2011) (statute of limitations barred unjust enrichment claim where plaintiff last provided monetary benefits, which served as the basis of his unjust enrichment claim, more than three years prior to bringing suit). Dr. Mhaka alleges that she "conferred upon the Defendants a benefit in the form of the subject matter covered by the Patents that represent her inventive contributions." (Dkt. 61 ¶ 122.) This "subject matter" was supposedly "developed

---

[6] Relatively few Maryland cases address the tort of "constructive fraud." Because it is a civil action at law, however, and because no exception exists under the Maryland Code for "constructive fraud," the applicable limitations period is three years. Md. Code, Cts. & Jud. Proc. § 5-101.

[7] "Defendants through their incorporation of Dr. Mhaka's 2002-2003 inventive contributions (as described above, and including but not limited to the conception of AMM9) into the claimed subject matter of the Patents have permanently deprived Dr. Mhaka of her rights and/or interest in her inventions." (Dkt. 61 ¶ 106.)

[8] "Defendants have breached the duties they owed Dr. Mhaka through causing and/or allowing the incorporation of inventions and/or intellectual property developed by her while a graduate student in Dr. Isaacs' and Dr. Denmeade's laboratories into the Patents." (Dkt. 61 ¶ 116.)

by Dr. Mhaka while a graduate student in Dr. Isaacs' and Dr. Denmeade's laboratories" — in 2002-2004. (*Id.* ¶ 123.) In sum, each of Dr. Mhaka's tort claims accrued by November 3, 2006, six years before her complaint. As a result, they are barred.

**B.      Because Dr. Mhaka Was On Inquiry Notice Of Her Claims More Than Three Years Before Bringing Her Claims, Any "Tolling" Argument Cannot Succeed**

Dr. Mhaka may seek to oppose this motion by invoking the "discovery rule" and, in so doing, to argue that the Counterclaim Defendants somehow concealed her causes of action from her. Such an argument would be without merit. Maryland courts have advised that, absent evidence of "stealth, subterfuge, or other difficulties of detection . . . our statutes of limitations are to be strictly construed." *Murphy*, 697 A.2d at 864-65. The statute of limitations begins to run on a plaintiff's claim when a cause of action has arisen and *the plaintiff has inquiry notice* or knows, *or reasonably should have known*, that the cause of action has arisen. *Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A*, 834 A.2d 170, 178-80 (Md. Ct. Spec. App. 2003) (emphasis added) (discussing the so-called "discovery rule"); *see also Merchs. Mortg. Co. v. Lubow*, 339 A.2d 664, 669 (Md. 1975) (the statute of limitations for fraud claims begins to run when the plaintiff discovers *or reasonably could have discovered* the fraud). A plaintiff need not know all the details of the cause of action. *DeGroft v. Lancaster Silo Co., Inc.*, 527 A.2d 1316, 1324 (Md. Ct. Spec. App. 1987). Nor need he or she know the amount of damages supposedly at stake. *See Supik*, 834 A.2d at 180. A plaintiff is on "inquiry notice" when he or she "has knowledge of circumstances which would cause a reasonable person . . . to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the [cause of action]." *Am. Gen. Assurance Co. v. Pappano*, 822 A.2d 1212, 1219 (Md. 2003) (internal quotations and citations omitted).

Here, undisputed facts show that Dr. Mhaka was on inquiry notice of her causes of action in 2008. In June of 2008, she conducted a search to determine the status of the pending patent application. (Heller Decl. Ex. D.) She knew that the patent application had been licensed to GenSpera and that "AMM9" (which she claims to have invented) was the company's "lead prodrug." (*Id.*; Heller Decl. Ex. F.) She set down in writing her concerns that the compound "[had been] added to the first patent." (Heller Decl. Ex. F.) When she contacted Johns Hopkins, she was advised to engage a lawyer. (Heller Decl. Ex. G.) Dr. Mhaka herself wrote, "I think I should go ahead and get counsel." (*Id.*) A lawyer could have accessed the prosecution history and the November 3, 2006 amendment, which was a matter of public record. (Heller Decl. Ex. C at 396:8-23.) And two months later, Dr. Mhaka herself could have seen the claim as part of the published application.

In sum, Dr. Mhaka failed to conduct a reasonable investigation of her grievances. She suspected that the application has been amended, yet she did not engage a patent lawyer to review the prosecution, and she did not monitor the publication of the application. Instead she waited four more years to bring her tort claims, based on alleged conduct that had occurred six years before. She cannot invoke the "discovery rule" to prop up those claims now. *See, e.g.*, *Doe v. Archdiocese of Washington*, 689 A.2d 634, 644 (Md. Ct. Spec. App. 1997) (the plaintiff bears the responsibility of conducting a reasonable investigation, and limitations may begin to run before the plaintiff knows that a cause of action has arisen).

This Court's analysis in *Weyerhaeuser Corp. v. Koppers Co., Inc.*, 771 F. Supp. 1406 (D. Md. 1991), is instructive here. There, the plaintiff landowner sued its former lessee for environmental contamination of the property. *Id.* at 1409. This Court held that the plaintiff's claim accrued when the state published a list of potentially contaminated sites, despite the fact

8

that the plaintiff failed to detect the contamination until later. *Id.* at 1416. According to the court, the plaintiff should have known about the list of contaminated sites and investigated further. *Id.* Once the information relating to the landowner's potential grievance became publicly available, the statute of limitations was not tolled. *Id.*; *see also Ferrucci v. Jack*, 258 A.2d 414, 415 (Md. 1969) (holding that plaintiff's failure to identify defendants by examining land ownership records was unreasonable and did not delay the running of limitations).

Like the plaintiff in *Weyerhaeuser*, Dr. Mhaka had public notice of her alleged grievance. Under the case law, this is sufficient for the statute of limitations period to go into effect. *See Virtual Physical Ctr. Rockville, LLC v. Phillips Med. Sys. N. Am., Inc.*, 478 F. Supp. 2d 840, 847-49 (D. Md. 2007) (holding that the plaintiff's claims for fraud and negligent misrepresentation in the sale of CT scanning machines accrued when a newspaper article questioning the safety and efficacy of the machines was published). Dr. Mhaka, moreover, was aware of the pending application and had been conducting database searches to determine whether a claim directed to AMM9 "had been added." *Cf. Hickey v. St. Martin's Press, Inc.*, 978 F. Supp. 230, 235 (D. Md. 1997) (holding that the plaintiff's libel claims accrued upon book publication where the plaintiff knew of the forthcoming publication). Indeed, Dr. Mhaka had been advised to engage a lawyer and had signaled an intent to do so. (Heller Decl. Ex. G.) By the close of 2008 (when the application itself had published), Dr. Mhaka was on "inquiry notice" of her grievance and "reasonably should have known" that the pending application had been amended, as she suspected months earlier. *Supik*, 834 A.2d at 178-80. As a consequence, the statute of limitations was not tolled and expired before she filed her complaint on November 1, 2012.

9

## CONCLUSION

For the reasons set forth above, Counterclaim Defendants Dr. John Isaacs and Dr. Samuel Denmeade respectfully request that this Court grant summary judgment that Dr. Mhaka's claims are barred by the applicable statute of limitations.

Respectfully submitted,

/s/ *Matthew M. Wolf*
Matthew M. Wolf (Md. Bar No. 23379)
John E. Nilsson (*pro hac vice*)
Seth I. Heller (*pro hac vice*)
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
(202) 942-5000
(202) 942-5733 (fax)
Matthew.Wolf@aporter.com
John.Nilsson@aporter.com
Seth.Heller@aporter.com

Wallace Wu (*pro hac vice*)
ARNOLD & PORTER LLP
44th Floor
777 South Figueroa Street
Los Angeles, CA 90017
(213) 243-4000
(213) 243-4199 (fax)
Wallace.Wu@aporter.com

***Counsel for Plaintiff GenSpera, Inc.***

DATED: January 2, 2014

## **CERTIFICATE OF SERVICE**

I hereby certify that, on January 2, 2014, I filed the foregoing Memorandum In Support of Counterclaim Defendants Denmeade's and Isaacs' Motion for Summary Judgment via the Court's CM/ECF system, which will deliver electronic notice to each party in this case.

/s/ *Matthew M. Wolf*
Matthew M. Wolf (Md. Bar No. 23379)