**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| GENSPERA, INC.,<br>Plaintiff, Counterclaim Defendant | * | |
| | * | Civil Action No. MJG-12-772 |
| | * | |
| | * | |
| | * | |
| v. | * | |
| ANNASTASIAH MUDIWA MHAKA,<br>Defendant, Counterclaim Plaintiff | * | |
| *   *   *   *   *   *   * | * | *   *   *   *   *   * |
| ANNASTASIAH MUDIWA MHAKA,<br>Counterclaim Plaintiff | * | |
| | | Civil Action No. MJG-12-3302 |
| v. | * | |
| GENSPERA, INC., DR. JOHN ISAACS and<br>DR. SAMUEL DENMEADE,<br>Counterclaim Defendants | * | |
| | * | |
| | * | |
| | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF COUNTERCLAIM DEFENDANT GENSPERA, INC.'S MOTION FOR SUMMARY JUDGMENT

Counterclaim Defendant GenSpera, Inc. respectfully submits this Memorandum in

Support of its Motion for Summary Judgment.  As explained below, there are no genuine issues

of material fact and GenSpera is entitled to judgment as a matter of law.

**INTRODUCTION**

Counterclaim Defendant GenSpera, Inc. ("GenSpera") has joined in Counterclaim Defendants Drs. John Isaacs' and Samuel Denmeade's motion for summary judgment, in which they show that Counterclaim Plaintiff Dr. Annastasiah Mudiwa Mhaka's ("Dr. Mhaka's) tort claims are barred by Maryland's statute of limitations.  Even if those claimed were not time-barred, however, they would still suffer from insurmountable legal and factual defects.  Maryland case law makes plain that damages are a necessary element of each of Dr. Mhaka's claims, and she must prove her alleged damages with specificity.  Despite this, Dr. Mhaka has failed to identify even remotely her alleged damages — whether through written discovery response, Rule 26(a) disclosures or an expert report.  With fact discovery and expert discovery now closed, Dr. Mhaka cannot adduce evidence of a specific theory and/or amount of damages.  Thus, GenSpera is entitled to summary judgment on all claims on that basis alone.

Above and beyond this failure of proof, which — like the statute of limitations bar — cuts across all of Dr. Mhaka's claims, each tort claim faces its own insuperable obstacles.  First, Maryland law does not permit an action for the conversion of intangible intellectual property.  Second, Maryland courts only recognize the tort of "constructive fraud" where the defendant owed a legal (*e.g.*, fiduciary) duty to the plaintiff.  Here, Dr. Mhaka cannot show that GenSpera ever owed her any such duty at all.  Third, a claim of unjust enrichment requires a showing that the defendant has unjustly retained a benefit *obtained from the plaintiff*.  Dr. Mhaka has not adduced any evidence showing that GenSpera has retained any benefit obtained from her.  GenSpera licensed the patents at issue from the named inventors, Drs. Isaacs and Denmeade.  Drs. Isaacs and Denmeade obtained those patents from Johns Hopkins University.  GenSpera never obtained any benefit from Dr. Mhaka.  Indeed, to date, it has obtained no financial benefit

2

at all from the patents.  For all of these reasons, which are explained in more detail below, Dr.

Mhaka's tort claims are untenable, and GenSpera is entitled to judgment as a matter of law.

<strong>BACKGROUND</strong>

**A.     The Assignment Of The Patents To The Inventors And Their Licensing To GenSpera**

As set forth in more detail in the Memorandum in Support of the Counterclaim

Defendants' Motion to Dismiss, Dr. Mhaka's tort claims turn on the allegation that she was

wrongly omitted from U.S. Patent Nos. 7,468,354 ("the '354 patent") and 7,767,648 ("the '648

patent").  (No. 12-3302, Dkt. 8-1, at 1-3).  The two named inventors on those patents, Drs.

Samuel Denmeade and John Isaacs, were working as professors and researchers at Johns

Hopkins University ("Hopkins") at the time of the original December 1, 2000 provisional patent

application and the November 30, 2001 PCT Application that formed the basis for the '354

patent and '648 patent.  (McSorley Decl. Ex. A ("Provisional Application Cover Sheet")).[1]

Those applications represented part of a larger platform based on their research and the work of

Dr. Søren Brøgger Christensen of the University of Copenhagen in Denmark.  (McSorley Decl.

Ex. B ("Dionne Decl.") ¶ 2).  That platform was based on the development of prodrugs

(biologically inactive compounds metabolized in the body to produce a drug) for the treatment of

cancer.  (*Id.*)  Dr. Christensen's research showed that a modified version (or analog) of

thapsigargin  (8-O-(12-aminododecanoyl)-8-O-debutanoylthapsigargin) could be useful in

triggering apoptosis, or cell death, in cancerous cells.  (*Id.*)  Drs. Isaacs and Denmeade's research

showed that this thapsigargin analog could be joined to a peptide (a sequence of amino acids) to

form a conjugate that was inactive as a drug.  (*Id.*)  Their research also showed that certain

---

[1] The exhibits referenced in this memorandum are attached to the Declaration Of Thomas D. McSorley In Support Of Counterclaim Defendant GenSpera, Inc.'s Motion For Summary Judgment ("McSorley Decl.").

peptides were specifically cleaved by proteins disproportionately produced by cancer cells —
such as prostate specific antigen ("PSA"), human glandular kallikrein 2 ("hk2"), and prostate
specific membrane antigen ("PSMA"). (*Id.*)

In July of 2003, Hopkins informed Drs. Denmeade and Isaacs that it intended to abandon
the pending applications reflecting their research. (McSorley Decl. Ex. C ("Hopkins E-mails") at
4; McSorley Decl. Ex. B ("Dionne Decl.") ¶ 3). These included the pending PSMA-targeted
prodrug patent application that would issue in 2008 as U.S. Patent No. 7,468,354 (Application
No. 10,432,849), of which U.S. Patent No. 7,767,648 is a divisional or continuation. (McSorley
Decl. Ex. B ("Dionne Decl.") ¶ 3). The inventors entered into discussions with Dr. Craig Dionne
to raise the possibility of starting a company that could raise money to pay those costs. (*See*
McSorley Decl. Ex. D ("Dionne Correspondence"); McSorley Decl. Ex. B ("Dionne Decl.") ¶ 4).
This was impetus for the formation of GenSpera in November of 2003. (McSorley Decl. Ex. E
("Denmeade Dep.") at 54:23; (McSorley Decl. Ex. B ("Dionne Decl.") ¶¶ 2-4 ). At the time of
the company's formation, its primary focus centered on the development of a PSA-targeted
prodrug, not a PSMA-targeted prodrug as claimed in Application No. 10,432,849. (*See*
McSorley Decl. Ex. F ("GenSpera April 2004 Business Plan"), at 2 (stating that GenSpera's
"[l]ead product" and "first drug candidate" was G-114 a PSA-targeted prodrug).

In February of 2004, Hopkins assigned Application No. 10,432,849 (and any
continuation applications stemming from it) to Drs. Denmeade and Isaacs. (McSorley Decl. Ex.
G ("Assignment Agreement") at 3-4, Appendix B; McSorley Decl. Ex. B ("Dionne Decl.") ¶ 5).[2]
On March 10, 2004, Drs. Denmeade and Isaacs entered into a "Binding Letter of Intent and

---

[2] Under the Assignment Agreement, Drs. Denmeade and Isaacs also agreed to pay Hopkins 10%
of any future revenue or consideration they received from the licensing of patents issuing from
their applications. (McSorley Decl. Ex. G at 4).

Memorandum Agreement" with GenSpera under which they granted GenSpera an option to secure an exclusive license to any patent issued pursuant to an Assignment Agreement in exchange for GenSpera's agreement to pay the costs associated with prosecution of the applications assigned by Hopkins to them. (McSorley Decl. Ex. H ("Letter of Intent") at 1, 3; McSorley Decl. Ex. B ("Dionne Decl.") ¶ 4).[3] On April 11, 2011, as provided in the Letter of Intent, GenSpera and Drs. Denmeade and Isaacs entered into a Final Exclusive License Agreement. (McSorley Decl. Ex. I ("Final Agreement") at 1-2).

### B.   GenSpera Today

GenSpera is a small biotech start-up. (*See* No. 12-772, Dkt. 71-10 ¶ 2). Dr. Craig Dionne is one of just two full-time employees. (*Id.*) Currently, it has no products on the market (in the U.S. or anywhere else), and it has never made any revenues. (McSorley Decl. Ex. J ("GenSpera S-1") at 4-5). The company has accumulated a deficit of $32.4 million while attempting to bring its first product to market. (*Id.* at 28). Currently, however, that prodrug is still in clinical trials and it is not certain when, if ever, it will be approved. (*Id.* at 4). According to its most recent securities filings, it has assets of approximately $3.9 million and liabilities of $2.6 million (not including stockholder equity). (*Id.* at F-3).

### C.   Dr. Mhaka's Tort Claims

On November 9, 2012, after conceding that she could not, under federal patent law, be added to the patents as an inventor, Dr. Mhaka filed an action in Maryland state court, alleging conversion, constructive fraud, and unjust enrichment. (*See* Complaint, No. 12-3303, Dkt. 2). After the Counterclaim Defendants removed the action to this Court, the Court consolidated it

---

[3] Hopkins was fully aware of the formation of GenSpera and the inventors' intent to license their applications to GenSpera and the terms of that license. (*See* McSorley Decl. Ex. D ("Dionne Correspondence")).

with the earlier inventorship case.  (*See* Memorandum and Order, No. 12-772, Dkt. 40).  Each of

Dr. Mhaka's tort claims is based on Drs. Denmeade and Isaacs's allegedly wrongful conduct in

amending their patent application in 2006 to claim "[a] prodrug comprising 8-O-

debutanoylthapsigargin (12ADT) linked to the aspartic acid of a peptide having the sequence

Asp-Glu*Glu*Glu*Glu, wherein at least one of the bonds designated with * is a gamma carboxy

linkages [sic]," a subgenus of compounds that Dr. Mhaka claims to have invented.  (*See* Sec.

Am. Ans., No. 12-772, Dkt. 61 ¶¶ 106, 116, 122-23).[4]

Dr. Mhaka attached no value to her claims in any of her pleadings, stating under each

cause of action only that she is entitled to "an amount to be ascertained at trial."  (Dkt. 61 ¶¶ 111,

119, 124).  Under Fed. R. Civ. P. 26(a)(1)(A)(iii), Dr. Mhaka was required to disclose "a

computation of each category of damages claimed," as well as "the documents or other

evidentiary material . . . on which each computation is based, including materials bearing on the

nature and extent of injuries suffered[.]"  Dr. Mhaka disclosed no such computation or

evidentiary material, however.  When asked to identify her damages in interrogatories, Dr.

Mhaka refused to do so, claiming that, "[t]o compute her damages Mhaka expects to rely on

documents and other information exclusively within the possession and control of Counter-

Claim Defendants, which have not yet been provided to Mhaka."  She further stated that she

"expects to rely on expert assistance in performing her damages analysis" and noted that "no

expert report is due until January 27, 2014."  (McSorley Decl. Ex. K ("Mhaka Resp. to Interrogs.

13 & 14")).  Fact discovery and expert discovery have now closed, and Dr. Mhaka has never

updated her Rule 26(a) disclosures or interrogatory responses to identify her damages for any of

---

[4] According to her Second Amended Answer (which contains her counterclaims), the "incorporation" of her alleged "inventive contributions . . . into the claims subject matter of the ['354 and '648 patents]" is what constitutes the counterclaim defendants alleged conversion, constructive fraud, and unjust enrichment. (*See, e.g.*, Dkt. 61 ¶ 106).

her three claims.  Nor did she ever provide an expert report setting forth a damages analysis of

any kind.

### ARGUMENT

**A.      Because Dr. Mhaka Has Adduced No Evidence Of Damages, GenSpera Is Entitled To Summary Judgment As A Matter Of Law[5]**

Maryland law requires, whether actions sound in tort or contract, "that damages must be

shown *with some degree of specificity, not speculation*." *Aeropesca Ltd. v. Butler Aviation*

*Intern., Inc.*, 411 A.2d 1055, 1067 (Md. App. 1980) (citing *Fred Frederick Motors, Inc. v.*

*Krause*, 277 A.2d 464 (Md. App. 1971)) (emphasis added).  Although a plaintiff need not set

forth and prove its damages with mathematical precision, it must identify "sufficient evidence to

establish the extent of [its] damages with reasonable certainty and without the necessity to rely

upon speculation or conjecture." *Crawford v. Mindel*, 469 A.2d 454, 460 (Md. App. 1984).

This requirement applies to each of the torts that Dr. Mhaka has chosen to assert.  In the

case of conversion, "[d]amages … are measured by 'the fair market value of the property at the

time and place of the conversion.'" *Dynacorp Ltd. v. Aramtel Ltd.*, 56 A.3d 631, 685 (Md. App.

2012) (quoting *Vaughn v. Vaughn*, 806 A.2d 787 (Md. App. 2002)).  Even if an intangible idea

could be converted (which it cannot be, *see infra* Part B), Dr. Mhaka has not identified (let alone

proven) in any way the supposed "fair market value" of her alleged inventive contribution at the

time the alleged conversion occurred (*i.e.*, at the time of the claim's amendment in 2006).

Constructive fraud also "requires proof of damages" equal to either the plaintiff's "actual losses"

or "the benefit-of-the-bargain . . . when damages are proved with sufficient certainty." *See id.* at

---

[5] To the extent the Court grants summary judgment to GenSpera on this issue, Drs. Denmeade and Isaacs are also entitled to judgment as a matter of law because there is no genuine issue of material fact as to damages against them also. *See* Fed. R. Civ. P. 56(f)(1).

683-84, 683 n.45 (citations omitted).  Here, Dr. Mhaka has offered proof of neither.  Indeed, she has not even posited a theory of the "value" of her invention, whether at the time the alleged conversion occurred (two years prior to the claim's allowance) or at any other point in time.

In *Dynacorp*, the Court of Special Appeals held that the plaintiffs had failed as a matter of law to prove their damages from a failed business venture.  56 A.3d at 498-99.  Concluding that the plaintiffs' alleged damages were "speculative and uncertain," the court of appeals reversed the judgment in their favor.  *Id.*  Dr. Mhaka's "damages" for conversion and "constructive fraud" are not only "speculative" they are entirely unknown.  There is not a single piece of information produced during fact discovery or expert discovery that discloses Dr. Mhaka's supposed damages for conversion or for constructive fraud.

Dr. Mhaka's "unjust enrichment" claim fails for the same reason.  Because "the measure of a recovery for unjust enrichment is the gain by the defendant and not the loss by the plaintiff, no claim of unjust enrichment may be asserted by [a] plaintiff in the absence of evidence establishing the amount of defendant's enrichment." *Abt Assoc., Inc. v. JHPIEGO Corp.*, 104 F. Supp. 2d 523, 535-36 (D. Md. 2000).  The alleged benefit in this case consists of Dr. Mhaka's "inventive contributions" and/or the "intellectual property developed by Dr.  Mhaka" that the Counterclaim Defendants supposedly wrongly incorporated in the pending patent application in 2006.  (Dkt. 61 ¶¶ 122-124).  Having failed to come forward during fact and expert discovery with any measure or valuation of those "inventive contributions," Dr. Mhaka lacks the requisite evidence to proceed to trial.  The court's analysis in *Abt* is instructive.  Like Dr. Mhaka, the plaintiff in *Abt* brought an unjust enrichment claim premised on the supposed misappropriation of its "valuable ideas and information." *Abt Assoc.*, 104 F. Supp. 2d at 535. Noting "the intangible nature of [the] alleged benefit," the court granted the defendant's motion for summary

judgment because "there [was] no evidence in the record concerning the value of such benefit on which any recovery by plaintiff could be based[.]" *Id.* at 535-36.

Not only has Dr. Mhaka failed to support a damages theory for any of her three tort claims, she has failed even to identify one. With fact and discovery now complete, it is too late for her to do so now. Because she cannot prove her damages with "reasonable certainty," summary judgment should be entered in the counterclaim defendants' favor. *See Crawford*, 469 A.2d at 460.

> **B.** **Dr. Mhaka's Conversion Claim Fails As A Matter Of Law Because Maryland Does Not Recognize Actions For the Conversion Of Intangible Property[6]**

The Maryland Court of Appeals has made clear that the tort of "conversion" can only apply to intangible property when that property is "merged or incorporated into a transferable document, and such "tangible documents" are themselves then "transferred improperly" to the defendant. *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 963-965 (Md. 1999); *see also e.g.*, *J & J Sports Productions, Inc. v. Tag Galleries, LLC*, Civil No. 11-3333, 2012 WL 2577632, at *3 (D. Md. 2012) ("Maryland has clearly taken a more restrictive approach to the tort than has been taken by other states. . . . Maryland clearly requires the intangible property right allegedly converted to have been merged into a transferable document."); *Alliance for Telecom. Indus. Solutions, Inc. v. Hall*, Civil No. 05-440, 2007 WL 3224589, at *14 (D. Md. 2007) ("Maryland has not been as expansive as some states in recognizing intangible rights for the purposes of conversion[.]"); *Xereas v. Heiss*, 933 F. Supp. 2d 1, 6-7 (D.D.C. 2013).

---

[6] Drs. Denmeade and Isaacs are also entitled to judgment as a matter of law on Dr. Mhaka's conversion claim because Dr. Mhaka adduced no evidence of the conversion of any tangible document or other tangible property. *See* Fed. R. Civ. P. 56(f).

In *Jasen*, for instance, the plaintiff alleged that the defendants had converted its "partnership interests" in a business venture. 731 A.2d at 965. The court acknowledged that those interests had "merged into both [a] certificate of limited partnership filed with [Massachusetts] and [a] written partnership agreement." *Id.* Nonetheless, because the plaintiff could not show that it had previously owned *a document* over which the defendants subsequently exercised physical dominion, the court held that its conversion claim could not succeed. *Id.*[7]

Here, the allegedly "converted" property consists of Dr. Mhaka's supposed "inventive contributions." (Dkt. 61 ¶ 106). Dr. Mhaka admits that she voluntarily disclosed those alleged "inventive contributions" to Dr. Denmeade in a conversation. The only documents that Dr. Mhaka can cite that supposedly show those same supposed contributions were her laboratory notebooks and her dissertation. As the heads of the laboratory, Drs. Isaacs and Denmeade rightfully had access to her laboratory notebooks.[8] And as her dissertation advisors, Drs. Isaacs and Denmeade rightfully had access to Dr. Mhaka's dissertation (which was, in any case, made publicly available in 2004). In short, there is not even an allegation in this case that any of the counterclaim defendants wrongly took possession over a tangible document containing Dr. Mhaka's alleged "inventive contributions." As a consequence, Dr. Mhaka's conversion claim fails under Maryland law. *See Sharma v. OneWest Bank, FSB*, Civil No. 11-834, 2011 WL

---

[7] In contrast, the court also concluded that another of the plaintiff's conversion claims was tenable, in the abstract, because it was premised on the supposed conversion of corporate shares. *Jasen*, 731 A.2d at 965-66. Noting that it was possible for a tortfeasor to exercise possession over "tangible, valid stock certificates representing . . . intangible corporate shares," the court nonetheless concluded that the plaintiff's claim failed because of the lack of evidence that the defendants had engaged in such conduct. *Id.*

[8] The notebooks are now lost. (McSorley Decl. Ex. E ("Denmeade Dep.") at 133:20-134:11). Although Dr. Mhaka claims she did not take them, (McSorley Decl. Ex. L ("Mhaka Dep.") at 291:8-24), at least one lab member saw a box with Dr. Mhaka's personal effects in the laboratory with the notebooks in it. (McSorley Decl. Ex. M ("Rosen Dep.") at 71:4-73:6; 76:6-77:21). Dr. Mhaka later left with the box. (*Id.* at 77:19-21).

5167762, at *6 (D. Md. 2011) ("Plaintiffs fail to allege that any tangible documents have been

converted by OneWest.  Indeed, the document at issue—the deed of trust—was attached to the

first amended complaint by the Plaintiffs.  As Maryland has decided not to safeguard via the tort

of conversion the sorts of purely intangible rights asserted by the Plaintiffs, this count must be

dismissed.").[9]

The Court of Special Appeals' analysis in *Brass Metal Products, Inc. v. E-J Enterprises,*
*Inc.*, 984 A.2d 362 (Md. App. 2009), is also instructive.   There, the plaintiff claimed to have

developed its own proprietary "dies, die rights, die drawings, and custom railings."  *Id*. at 378.  It

then charged the defendant with "converting" its property through unauthorized use of the

plaintiff's proprietary dies and custom railings.  *Id.*   The Court of Appeals noted that the claim

was properly resolved in the defendant's favor at summary judgment, because the plaintiff had

failed to show "that the purported intellectual property rights at issue . . . were merged into a

document that was transferred."  *Id.* at 378-79.  Because Maryland law does not recognize claims

for conversion of ideas of other intangible property, Mhaka's tort claim necessarily fails against

each of the Counterclaim Defendants.  Accordingly, all of the Counterclaim Defendants are

entitled to summary judgment on Dr. Mhaka's conversion claim.

---

[9] To the extent Dr. Mhaka's alleged intellectual property was incorporated into the patents, that
"property" is, like the contents of most patents, publicly accessible to anyone in the world via the
U.S. Patent and Trademark Office's website. *See*
http://pdfpiw.uspto.gov/.piw?PageNum=0&docid=07468354&IDKey=FAC49961B0DF&Home
Url=http%3A%2F%2Fpatft.uspto.gov%2Fnetacgi%2Fnph-
Parser%3FSect1%3DPTO1%2526Sect2%3DHITOFF%2526d%3DPALL%2526p%3D1%2526u
%3D%25252Fnetahtml%25252FPTO%25252Fsrchnum.htm%2526r%3D1%2526f%3DG%2526
l%3D50%2526s1%3D7468354.PN.%2526OS%3DPN%2F7468354%2526RS%3DPN%2F7468
354.

**C.**     **Dr. Mhaka's Constructive Fraud Claim Against GenSpera Fails As A Matter of Law Because GenSpera Owed her No Legal Or Equitable Duty**

At least as against GenSpera, Dr. Mhaka's "constructive fraud" claim also fails as matter of law for another reason (beyond being barred by Maryland's statute of limitations and beyond Dr. Mhaka's failure to identify and prove her damages).  "Constructive fraud" in Maryland involves the breach of a legal or equitable duty.  *John B. Parsons Home, LLC v. John B. Parsons Foundation*, --- A.3d ---, 2014 WL 1711236, at \*14 (Md. App. April 30, 2014).[10]  The presiding court must identify that duty as a matter of law.  *See Todd v. Mass Transit Administration*, 816 A.2d 930, 933 (Md. 2003) (stating that "the existence of a legal duty ordinarily is a question of law to be decided by the court").  It may find that such duty exists based on evidence of a special "relationship of trust and confidence" between the defendant and the plaintiff.  *Crawford*, 469 A.2d at 459.  These include the relationship "between an attorney-client or trustee-beneficiary" and may also include relationships between "a parent-child or priest-parishioner/penitent[.]" *Latty v. St. Joseph's Soc. of Sacred Hear, Inc.*, 17 A.3d 155, 161-62 (Md. App. 2011).  The key inquiry is whether the nature of the relationship imposed a duty of confidence on the part of the defendants toward the plaintiff.  *Id.* at 161-62 (noting that such a duty may lie where there is "a dependant relationship where one party must 'necessarily repose trust and confidence in the good faith and integrity of the other'") (quoting *Orwick v. Moldawer*, 822 A.2d 506, 511 (Md. App. 2003)); *see also Figgins v. Cochrane*, 942 A.2d 736, 747 (Md. 2008) (explaining that a

---

[10] Specifically, "constructive fraud is: a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud." *Parsons*, 2014 WL 852062, at \*14 (quoting *Scheve v. McPherson*, 408 A.2d 1071, 1076 (Md. App. 1979)).

"confidential relationship" under Maryland law may exist on the part of caretaker for an elderly parent, depending on evidence).[11]

Here, there is absolutely no evidence to support Dr. Mhaka's allegation that "GenSpera owed Dr. Mhaka a duty of confidence and/or fiduciary duty with respect to the control and influence it exerted over intellectual property developed in Dr. Isaacs' and Dr. Denmeade's laboratories." (Dkt. 61 ¶ 115).  GenSpera has never employed Dr. Mhaka in any way.  It has never entered into any kind of transaction with her.  Indeed, there is not a single piece of correspondence between Dr. Mhaka and GenSpera prior to this litigation.  Accordingly, GenSpera cannot have constructively defrauded Dr. Mhaka as a matter of law, and it is entitled to summary judgment on her constructive fraud claim.  *See Fogal v. Richards*, Nos. 91-2329, 91-2342, 966 F.2d 1442, at *3 (4th Cir. 1992) (unpublished) (affirming directed verdict on constructive fraud claim because the plaintiff "offered no evidence that a relationship of trust and confidence existed at the time of the alleged fraud") (quoting *Crawford*, 469 A.2d at 459).

**D.     Dr. Mhaka's Unjust Enrichment Claim Against GenSpera Fails As A Matter Of Law Because GenSpera Obtained No Benefit From Dr. Mhaka**

Finally, Dr. Mhaka's unjust enrichment claim against GenSpera also fails because she never conferred any benefit upon GenSpera.  To prove "unjust enrichment," a plaintiff must establish: "1. a benefit conferred upon the defendant *by the plaintiff*; 2. An appreciation or knowledge by the defendant of the benefit; and 3. The acceptance or retention by the defendant

---

[11] There is no precedent to support the proposition that a professor owes any similar duty of confidence to a graduate student.  Despite the fact that Drs. Denmeade and Isaacs have not moved for summary judgment on this ground, they maintain their right to seek relief on this ground before, during and after any trial proceedings to the extent that the counterclaim defendants' other motions for summary judgment are denied.  Dr. Mhaka cannot credibly assert that she reposed the kind of trust—like that of a disabled parent, an attorney/client, a priest/penitent, or a minor child—that can legally establish a confidential relationship in Maryland, nor can she show that Drs. Isaacs and Denmeade were her "fiduciaries."

of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Hill v. Cross Country Settlements*, 936 A.2d 343, 351 (Md. 2007) (citation omitted).

Here, GenSpera has never received a benefit from Dr. Mhaka, and she has certainly never conferred a benefit upon GenSpera.  The company licensed the proposed patent applications from Drs. Isaacs and Denmeade.  After Hopkins indicated that it intended to abandon the applications, GenSpera agreed to take on the costs of their prosecution, which has amounted to approximately $160,000 since 2004.  (McSorley Decl. Ex. B ("Dionne Decl.") ¶ 5).  In the period since, GenSpera has not received a penny of revenue from the patents or from sales of a product covered by them.

At the January 24, 2013, hearing in this matter, the Court rightly asked how GenSpera could be held liable under an "unjust enrichment" theory:  "I don't understand how GenSpera is in an unjust enrichment claim?" (McSorley Decl. Ex. N ("Jan. 24, 2013, Hr'g. Tr.") at 33).  Dr. Mhaka's counsel conceded, "[i]t may not be at the end of the day[.]"  (*Id.* at 34).  The end of the day has come.  GenSpera has never transacted with Dr. Mhaka and never received a benefit that Dr. Mhaka conferred upon it.  It licensed the patent applications at issue from Drs. Denmeade and Isaacs with Hopkins' full awareness.  Dr. Mhaka's unjust enrichment claim cannot succeed against it.  *See Plitt v. Greenberg*, 219 A.2d 237, 241 (Md. 1966) (where transferee received another's property "in good faith after paying good and valuable consideration for it," plaintiff cannot prevail on unjust enrichment claim against it).

## CONCLUSION

For the reasons stated above, Counterclaim Defendant GenSpera, Inc. respectfully

requests that this Court grant summary judgment in its favor and against Counterclaim Plaintiff

Annastasiah Mudiwa Mhaka.

Respectfully submitted,

/s/ *Thomas Dallas McSorley*

Thomas D. McSorley (D. Md. Bar No. 18609)
John E. Nilsson (*pro hac vice*)
Seth I. Heller (*pro hac vice*)
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
(202) 942-5000
(202) 942-5733 (fax)
Tom.McSorley@aporter.com
John.Nilsson@aporter.com
Seth.Heller@aporter.com

Wallace Wu (*pro hac vice*)
ARNOLD & PORTER LLP
44th Floor
777 South Figueroa Street
Los Angeles, CA 90017
(213) 243-4000
(213) 243-4199 (fax)
Wallace.Wu@aporter.com

***Counsel for Counterclaim Defendant
GenSpera, Inc.***

DATED: May 6, 2014

CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2014, I filed a copy of this Memorandum in Support of

Counterclaim Defendant GenSpera, Inc.'s Motion for Summary Judgment via the Court's

CM/ECF system, which will deliver electronic notice to each party in this case.


/s/     *Thomas Dallas McSorley*
Thomas Dallas McSorley  (D. Md. Bar No.18609)